## PEOPLE v JOLLY

Docket Nos. 93492, 93493. Argued December 9, 1992 (Calendar No. 9).
    Decided June 22, 1993.

Paul M. Jolly was convicted by a jury in the Genesee Circuit
    Court, Donald R. Freeman, J., of unarmed robbery and subse-
    quently pleaded guilty of being an habitual offender. The Court
    of Appeals, CAVANAGH, P.J., and D. E. HOLBROOK, JR., and
    CYNAR, JJ., reversed in an opinion per curiam, and remanded
    the case for a new trial, holding that the trial court erred in
    submitting an armed robbery charge to the jury because the
    people had produced inadequate evidence to support either that
    the defendant actually was armed with a dangerous weapon or
    was armed with an article used or fashioned to induce a victim
    to reasonably believe that he was armed and thus erred in
    denying the defendant a directed verdict of not guilty of armed
    robbery (Docket Nos. 111171, 111196). The people appeal.

In an opinion by Justice RILEY, joined by Justices LEVIN,
    BOYLE, GRIFFIN, and MALLETT, the Supreme Court held:

The evidence presented was sufficient to permit a rational
    trier of fact to conclude that the element of armed robbery at
    issue was established beyond a reasonable doubt by circumstan-
    tial evidence, and, accordingly, within the province of the jury.

1. Conviction of armed robbery requires a finding that the
    defendant was armed either with a dangerous weapon or with
    an article used or fashioned in such a way as to lead a
    reasonable person to believe that it was a dangerous weapon at
    the time of the robbery. To establish that the defendant used or
    fashioned an article to resemble a dangerous weapon, it is not
    necessary that an article be offered into evidence. Rather, there
    must be some objective evidence of the existence of an article
    before a jury may assess the merits of an armed robbery
    charge. The existence of some object, whether actually seen or
    obscured, is objective evidence that the defendant possessed a
    dangerous weapon or an article used or fashioned to look like

REFERENCES

Am Jur 2d, Robbery §§ 5-8.
See ALR Index under Deadly Weapon; Robbery.

one. Related threats, whether verbal or gesticulatory, further support the existence of a weapon or article.

2. In this case, the defendant elicited the aid of an accomplice who called attention to the defendant while threatening the employee that the defendant would shoot him, and the employee noticed a bulge under the defendant's vest where a handgun conceivably could have been concealed. The existence of the bulge objectively supported submission of the armed robbery question to the jury for a determination on the basis of all the circumstances rather than solely on the size and position of the bulge.

Justice LEVIN, concurring, stated that where the use of an object hidden in a bag or under a coat to simulate the appearance of a weapon is involved, together with threatening behavior and statements indicating the existence of a weapon, the dangerous weapon prong of the armed robbery statute is in issue, the article used or fashioned as a dangerous weapon prong is not. Where some object, harmless in itself, is used as a weapon or is used or fashioned in a manner to lead the person assaulted to reasonably believe it to be a dangerous weapon, the article used or fashioned as a dangerous weapon prong is involved. Where, however, the evidence tends to show that the accused was carrying a dangerous weapon, the question for the jury is whether the accused actually was armed with a dangerous weapon, not whether the accused was possessed of an article used or fashioned in a manner to lead the person assaulted to reasonably believe it to be a dangerous weapon.

Reversed.

Justice BRICKLEY, dissenting, stated that in order to convict a person of armed robbery on the ground that an article was used or fashioned to induce a belief that it was a dangerous weapon, there must be evidence that the defendant possessed some article, and some evidence that the defendant used or fashioned the article in a manner to lead the victim to reasonably believe that the article was a dangerous weapon. Further, the use or fashioning must be shown to have been intentional and not inadvertent.

In this case, the people failed to present evidence sufficient to prove that the defendant intentionally used or fashioned an article to induce a belief that he was armed with a dangerous weapon. No connection was established between the bulge in the defendant's clothing and the threat to shoot the victim. No rational trier of fact could find beyond a reasonable doubt that the defendant used some article to create a bulge with the intent of inducing the victim to believe that it was a dangerous

weapon. Therefore, the trial court erred in refusing to grant the defendant's motion for a directed verdict. Because the trial court also erred in submitting the armed robbery charge to the jury, the defendant's unarmed robbery conviction should be reversed and the case remanded for a new trial.

Chief Justice CAVANAGH, dissenting, stated that in Michigan there are only two circumstances that distinguish unarmed robbery from armed robbery: the actual presence of a dangerous weapon, or the actual presence of some article harmless in itself, but used or fashioned in a manner to induce the reasonable belief that the article is a dangerous weapon. Words and threats alone are insufficient to convict a person of aggravated robbery. To convict a person of armed robbery under the "being armed" requirement, sufficient evidence must be introduced for a rational trier of fact to find beyond a reasonable doubt that the accused actually was armed with a dangerous weapon at the time of the robbery. A victim's subjective belief that a robber is armed with a dangerous weapon is not enough.

In this case, viewed in a light most favorable to the prosecution, the only evidence presented was a coassailant's threat, implying that the defendant was armed with a dangerous weapon, and the victim's perception of an unexplained bulge at the defendant's waistline. While this evidence satisfies the element required to convict a person of unarmed robbery, it is insufficient to permit a rational jury to find beyond a reasonable doubt that the defendant was, in fact, armed at the time of the robbery, or that the defendant used or fashioned an article to induce the belief that he was armed.

193 Mich App 192; 483 NW2d 679 (1992) reversed.

1. ROBBERY — ARMED ROBBERY — DANGEROUS WEAPONS.

Conviction of armed robbery requires a finding that the defendant was armed either with a dangerous weapon or with an article used or fashioned in such a way as to lead a reasonable person to believe that it was a dangerous weapon at the time of the robbery; to establish that the defendant used or fashioned an article to resemble a dangerous weapon, it is not necessary that an article be offered into evidence; rather, there must be some objective evidence of the existence of an article before a jury may assess the merits of an armed robbery charge; the jury may not be offered proof that focuses only on the subjective belief of the victim (MCL 750.529; MSA 28.797).

2. ROBBERY — ARMED ROBBERY — DANGEROUS WEAPONS — OBJECTIVE EVIDENCE.

The existence of some object, whether actually seen or obscured, is objective evidence that a defendant, charged with armed robbery, possessed a dangerous weapon or an article used or

fashioned to look like one; related threats, whether verbal or gesticulatory, may further support the existence of a weapon or article (MCL 750.529; MSA 28.797).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, and *Donald A. Kuebler,* Chief, Appellate Division, for the people.

State Appellate Defender (by *Ralph C. Simpson*) for the defendant.

RILEY, J. In this case, we are asked to determine the requisite elements of proof in proceedings for armed robbery. More specifically, we consider today the quantum of proof necessary to submit the issue of "armed" robbery to a jury. We conclude that the evidence presented in this case was sufficient for a rational factfinder to conclude that the element of armed robbery at issue here was established beyond a reasonable doubt by circumstantial evidence. Accordingly, we treat the question as a factual rather than a legal one that is therefore within the province of the jury to decide.

I

On September 28, 1987, Jose Lopez was working an evening shift at Arby's Restaurant on South Dort Highway in Flint, Michigan. About midnight, a man and a woman entered the restaurant. After ordering some food from Mr. Lopez, the woman handed him a paper bag and told him her companion had a gun and would shoot him unless he filled the bag with money. Mr. Lopez never saw a gun, and the male robber's hands were in view at all times, however, he did as the woman asked. The couple then left, taking about $91.

Jennifer Herzog and Paul Jolly were arrested for this robbery. Jolly was charged with armed robbery, MCL 750.529; MSA 28.797, and of being

an habitual offender,[1] MCL 760.10; MSA 28.1082.
The armed robbery statute provides:

> Any person who shall assault another, and shall
> feloniously rob, steal or take from his person, or in
> his presence, any money or other property, which
> may be the subject of larceny, such robber being
> armed with a dangerous weapon, *or any article
> used or fashioned in a manner to lead the person
> so assaulted to reasonably believe it to be a dan-
> gerous weapon,* shall be guilty of a felony . . . .
> [MCL 750.529; MSA 28.797. Emphasis added.]

Herzog agreed to testify against Jolly in exchange
for dismissal of the charge against her, and accep-
tance of a plea of guilty to unarmed robbery in
another case.

At trial, defendant claimed that the victim had
mistakenly identified him. He also suggested that
Ms. Herzog's testimony was influenced by the
favorable bargain she had made with the people.
The defense also argued that the requirements of
the armed robbery statute were not satisfied. The
people conceded at trial that defendant had no
weapon, but proceeded on a theory, based on the
"article" prong of the armed robbery statute, that
defendant had used or fashioned some article in a
manner to lead the victim to reasonably believe
that it was a dangerous weapon.

At trial, the people asked Mr. Lopez what, other
than Herzog's assertion, made him think that the
male robber had a gun. The following exchange
occurred:

> [*Lopez*]:  [S]he said, "He has a gun."

[1] Defendant had pleaded guilty of larceny from a person in 1986,
and had been sentenced to a year in jail and four years probation, the
terms of which included in-patient drug treatment. He was on proba-
tion at the time of the robbery.

*[People]*: Okay. Was there anything else that made you believe or think about a gun, in your mind?

*A.* Not really. Normally when, you know, somebody says they have a gun, I just, you know, I just thought that he had a gun.

*Q.* Okay. Was there anything that made you think that, though, any more?

\* \* \*

*A.* Well, there was like when he came in he was standing right in front of me. I saw a bulge in his mid, mid area of his—he had a vest on, I saw a bulge. I didn't know if it was a gun or not. She said that he had a gun and I assumed because there was a bulge it could have been a buckle or anything, and I didn't know. So I just went by what she said and just did what she asked.

Lopez later went to the Flint Police Department and looked at some photographs of possible perpetrators. He picked out one of the defendant. Lopez testified that he had told the police that he was not completely sure that the suspect in the photograph was the man who robbed him, but that he was fairly sure.

Herzog testified that she had been involved romantically with Jolly and that they lived together at the time of the robbery. She testified that on September 28, 1987, the day of the robbery she and defendant decided to rob a store to get the money to buy some drugs. After some discussion, they decided to rob Arby's. She testified that they did not have a weapon. The people asked her to describe their plan, and the following exchange occurred:

*[Herzog]*: I was to go in and, and ask for the money.

*[People]*: Yes, how were you going to ask for it?

*A.* I was going to tell them "Put the money in the bag or he would shoot you."

*Q.* Or what?

*A.* "He would shoot you, kill you," or whatever.

*Q.* That was discussed between you and Mr. Jolly before you even went in?

*A.* Yes.

The jury convicted defendant of unarmed robbery. He subsequently pleaded guilty of being an habitual offender and, in another courtroom, of violating his probation. He was sentenced to 9 to 22½ years for the unarmed robbery charge and to 6 years, 4 months to 10 years for probation violation.

Defendant appealed these convictions in the Court of Appeals which on March 3, 1992, set aside all defendant's convictions. 193 Mich App 192; 483 NW2d 679 (1992). The Court held that the trial court erred in submitting the armed robbery charge to the jury because the people did not present sufficient evidence. In order to survive a directed verdict motion, the Court stated the evidence must be sufficient to enable a rational trier of fact to find that the essential elements of the crime were proven beyond a reasonable doubt. *Id.* at 196. Specifically, according to the Court, the people must have presented evidence that could enable a rational trier of fact to find beyond a reasonable doubt *either* that defendant was actually armed with a dangerous weapon or actually armed with an article used or fashioned to induce a victim to reasonably believe that defendant was armed with a dangerous weapon. *Id.* at 201. The Court found that the evidence produced was inadequate to support either of these conclusions and, thus, the trial judge erred in denying a directed verdict for the armed robbery count. *Id.* at 199. The Court stated:

> While a victim need not see the entire article,
> the defendant must at least have the article in
> hand and fashion it to lead the victim to believe it
> is a dangerous weapon. [*Id.* at 201.]

The Court further held that it was necessary to
vacate the conviction and remand the case for a
new trial. It based this holding on the ground that
unfair prejudice always occurs when a jury is
allowed to consider a charge unwarranted by the
proofs because the possibility of a compromise
verdict substantially decreases defendant's chance
of acquittal. *Id.* at 199, n 1. The people appeal.

II

Conviction of armed robbery requires a finding
that the defendant was armed either with a dan-
gerous weapon or with an article used or fashioned
in such a way as to lead a reasonable person to
believe that it was a dangerous weapon at the
time of the robbery. MCL 750.529; MSA 28.797.
See also *People v Parker,* 417 Mich 556, 565; 339
NW2d 455 (1983), cert den 466 US 962 (1984).
Because the record is devoid of evidence that
defendant actually possessed a dangerous weapon
during the robbery, the prosecutor opted to follow
the second method of establishing armed robbery,
specifically, whether defendant used or fashioned
an article to resemble a dangerous weapon. It is to
this question that we now turn.

Working from the premise that an accused is
innocent until proven guilty, it is the prosecution's
burden in a criminal case to prove beyond a rea-
sonable doubt the essential elements of a crime.
*People v Hampton,* 407 Mich 354, 368; 285 NW2d
284 (1979) (opinion of COLEMAN, C.J.); *Jackson v
Virginia,* 443 US 307; 99 S Ct 2781; 61 L Ed 2d 560

(1979), reh den 444 US 890 (1979). As a threshold inquiry, the prosecutor must offer enough evidence for a court to conclude that a rational trier of fact could find that the essential elements of the crime have been established. *People v Wolfe,* 440 Mich 508, 513-515; 489 NW2d 748 (1992); *Hampton, supra* at 368. Circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of a crime. *People v Petrella,* 424 Mich 221, 275; 380 NW2d 11 (1985). See also *Wolfe, supra* at 524-526 (circumstantial evidence of possession with intent to deliver cocaine was held sufficient to submit the question to the jury); *People v Schollaert,* 194 Mich App 158, 170; 486 NW2d 312 (1992) (the elements of premeditation and deliberation may be inferred from the circumstances in an alleged first-degree murder); *People v Sharp,* 57 Mich App 624, 626; 226 NW2d 590 (1975) (the requisite intent to commit armed robbery may be inferred by the jury from circumstantial evidence).

Defendant argued, and the Court of Appeals agreed, that the trial court erred in denying his motion for a directed verdict. 193 Mich App 201. A trial court assesses the merits of a directed verdict motion through consideration of the evidence presented by the prosecution *in a light most favorable to the prosecution,* to determine whether a rational trier of fact could find that the elements of a crime were proven beyond a reasonable doubt. *Wolfe, supra* at 515; *Hampton,*[2] *supra* at 368; *Schollaert, supra* at 169-170. We believe that the evidence presented was sufficient to permit a rational trier of fact to conclude that the elements of armed robbery were proven beyond a reasonable doubt and would therefore affirm the decision of

[2] In *Hampton,* this Court specifically rejected the "any evidence" test in favor of the "sufficiency of the evidence" test.

the trial court. Accordingly, submission of the armed robbery issue was appropriate under the circumstances considered here. That the jury in this case concluded that defendant did not fashion an article to resemble a weapon indicates the closeness of the question, but this is of no consequence to the issue before us.

The operative language at issue is whether defendant was armed with "any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon . . . ." MCL 750.529; MSA 28.797. This language has been interpreted to require the actual possession of an article used or fashioned as a weapon in order to establish an armed robbery charge under the second method of proof. *Parker, supra* at 564. The question thus boils down to what constitutes "actual possession."

In *Parker,* a majority of this Court stated in dicta that the threat of being stabbed, without more, was insufficient to establish the existence either of a dangerous weapon or of an article used or fashioned to look like one.[3] The majority explained its reasoning in the following manner:

---

[3] The conviction was reversed and the case remanded for a new trial because the arrest of the defendant in his home without a warrant and more than five hours after the alleged abduction and rape of his victim was held not to stem from any exigent circumstances that would obviate the necessity of securing a search warrant. 417 Mich 563. The majority stated, however, that it would have reversed the conviction because of the following jury instruction, which it considered erroneous:

"Ladies and gentlemen, in order to fulfill the dangerous weapon element of the charge of robbery armed, it is not necessary that a weapon be introduced at trial, nor is it necessary for the complainant to see the weapon. All that is required is that the complainant have a reasonable belief that the defendant was armed with a dangerous weapon at the time of the incident, and for you to be convinced beyond a reasonable doubt of this belief " . . . . [417 Mich 566.]

To constitute armed robbery the robber must be armed with an article which is in fact a dangerous weapon—a gun, knife, bludgeon, etc., or some article harmless in itself, but used or fashioned in a manner to induce the reasonable belief that the article is a dangerous weapon.

Words or threats alone can never be dangerous weapons because the statute is concerned with weapons, not words.

To convict, the factfinder must make the determination that at the time of the robbery the assailant was in fact armed with something and not just that the victim thought he was armed. The determination must be based on the evidence.

*Words or threats may be evidence of the fact of being armed and under some circumstances they alone might support a verdict of guilty. When no other evidence of the presence of the weapon is adduced, however, it is imperative that the instructions stress the focus of the jury on the presence of the weapon or article and not the fear or belief of the victim.* [417 Mich 565. Emphasis added.]

A fair reading of *Parker* does not require submission of a dangerous weapon or other article into evidence, nor does it require that a witness see the make or model number of a gun or knife before the issue can be submitted to the jury. What cannot reach the jury is proof that only focuses on the subjective belief of the victim. In other words, there must be some objective evidence of the existence of a weapon or article before a jury will be permitted to assess the merits of an armed robbery charge. For example, an object pointing out from under a coat, together with statements threatening a victim with being shot, clearly satisfies the statutory definition of armed robbery. In such a case, there is evidence of actual possession of a weapon or article and the testimony regarding statements that, if believed,

make clear an intent to convince the victim of the existence of such a weapon or article. The facts in *Parker* indicate that the victim never saw anything that could have been the knife with which she was being threatened.

In *People v Saenz*, 411 Mich 454, 458; 307 NW2d 675 (1981), the Court recognized that "testimony that defendant used *his hand and a covering so as to resemble a gun* raises a factual question for the jury's consideration . . . ." (Emphasis in original.) In *Saenz*, the victim testified that he neither saw a bulge or hand underneath the defendant's coat nor was he told by the defendant that he had a weapon. In short, the victim's belief that the defendant was armed was completely subjective. Thus, the Court of Appeals reliance on *Saenz* was inappropriate because *Saenz* is easily distinguishable.

The typical armed robbery case prosecuted under the feigned weapon method involves either the use of a toy gun[4] or a finger or other object hidden in a bag or under a coat to simulate the appearance of a weapon[5] together with threatening behavior and statements indicating the existence of a weapon. The existence of some object, whether actually seen or obscured by clothing or something such as a paper bag, is objective evidence that a defendant possesses a dangerous weapon or an article used or fashioned to look like one. Related

[4] *People v Crittle,* 38 Mich App 118; 195 NW2d 799 (1972), rev'd on other grounds 390 Mich 367; 212 NW2d 196 (1973); *People v Schofield,* 124 Mich App 134; 333 NW2d 607 (1983), rev'd on other grounds 417 Mich 988; 334 NW2d 376 (1983). See, *generally,* anno: *Robbery by means of toy or simulated gun or pistol,* 81 ALR3d 1006.

[5] See, e.g., *People v Jury,* 3 Mich App 427; 142 NW2d 910 (1966); *People v Washington,* 4 Mich App 453; 145 NW2d 292 (1966); *People v Tullie,* 141 Mich App 156; 366 NW2d 224 (1985); *People v DeMeyers,* 183 Mich App 286; 454 NW2d 202 (1990). See also *People v McKenzie,* 439 Mich 910; 478 NW2d 661 (1992), wherein a majority of this Court denied leave to appeal a conviction for armed robbery where the defendant stated that he had a gun and kept his hand in his pocket.

threats, whether verbal or gesticulatory, further support the existence of a weapon or article.

In this case, an Arby's employee stated that he saw a bulge in defendant's vest. It was his belief that the bulge was a gun, especially in light of the fact that defendant's accomplice threatened that defendant would shoot or kill the employee if he failed to comply with the demand for money. Both the bulge and the threat are circumstantial evidence that defendant was armed either with a dangerous weapon or an article fashioned to look like one. Moreover, we were unable to locate any authority to the effect that testimony of threats regarding the use of a weapon must be divorced from any other evidence of a weapon's existence, such as a bulge. Accordingly, we need not focus solely on the size of the bulge in defendant's vest as the dissenters would have us do.

Instead, the factfinder must be permitted to determine the existence of a dangerous weapon or an article used or fashioned to resemble one on the basis of all circumstantial evidence where the evidence is "sufficient." See, e.g., *State v McCracken*, 829 SW2d 634 (Mo App, 1992) (threats of a killing and the existence of a bulge in the defendant's pocket were sufficient to prove the threatened use of a dangerous weapon even though the victims never actually saw an instrument). In the case before us, defendant elicited the aid of an accomplice, the accomplice called attention to defendant while threatening the Arby's employee that defendant would shoot him if he did not comply, and the employee noticed a bulge under defendant's vest located in a place where a handgun could conceivably be concealed. To require that the article either be seen by the victim or recovered from a defendant would not only be unrealistic, but runs counter to established case

law holding that the essential elements of a crime may be proven by circumstantial evidence. *Petrella, Wolfe, Schollaert,* and *Sharp, supra.* Moreover, we cannot believe that the Legislature intended such a result when it codified the armed robbery statute. We therefore conclude that the existence of the bulge objectively supported submission of the "armed" robbery question to the jury for a determination based on all the circumstances rather than solely on the size and position of the bulge.

Accordingly, we reverse the decision of the Court of Appeals and reinstate the jury's verdict.[6]

LEVIN, BOYLE, GRIFFIN, and MALLETT, JJ., concurred with RILEY, J.

LEVIN, J. (*concurring*). I have signed the opinion of the Court because I agree that there was sufficient evidence to make a jury submissible issue on the question whether defendant Paul Michael Jolly was carrying a dangerous weapon.

The testimony of Jose Lopez that Jolly's accomplice, Jennifer Herzog, handed Lopez a paper bag and told him that Jolly had a gun and would shoot him unless he filled the bag with money, together with the evidence of the bulge, tended to show that Jolly was armed with a gun, and made a prima facie case on the question whether he was armed with a dangerous weapon.

Although there was sufficient evidence to make a jury submissible issue on the question whether Jolly was armed with a dangerous weapon, Jolly could not properly be convicted of armed robbery unless the jury found, beyond a reasonable doubt, that he actually had a dangerous weapon. The

---

[6] Because of our holding in this issue, we do not address the other arguments raised by the defendant.

jury found that he did not have a dangerous weapon, and he was found guilty of unarmed robbery.

I write separately to emphasize the difference between the question of the sufficiency of the evidence, whether the prosecutor made a prima facie case, and the question to be submitted to the jury, whether the evidence established beyond a reasonable doubt that Jolly was actually armed with a dangerous weapon.[1]

The opinion of the Court states:

> Because the record is devoid of evidence that

[1] In *People v Parker*, 417 Mich 556, 564-565; 339 NW2d 455 (1983), cert den 466 US 962 (1984), this Court said:

> We think it clear from that history that when enacted the words "dangerous weapon," etc., contemplated that the defendant would actually have a dangerous weapon; this is implicit in the phrase "with intent, if resisted, to kill or maim." The elimination of the "with intent" requirement reduced the prosecutor's burden of proof, but does not provide a basis for construing the section as no longer requiring that the defendant actually have a dangerous weapon or an article used or fashioned in a manner to lead the persons so assaulted to reasonably believe it to be a dangerous weapon.
>
> It is not enough that the person assaulted is put in fear; a person who is subjected to an unarmed robbery may be put in fear.
>
> To constitute armed robbery the robber must be armed with an article which is in fact a dangerous weapon—a gun, knife, bludgeon, etc., or some article harmless in itself, but used or fashioned in a manner to induce the reasonable belief that the article is a dangerous weapon.
>
> Words or threats alone can never be dangerous weapons because the statute is concerned with weapons, not words.
>
> To convict, the factfinder must make the determination that at the time of the robbery the assailant was in fact armed with something and not just that the victim thought he was armed. The determination must be based on the evidence.
>
> Words or threats may be evidence of the fact of being armed and under some circumstances they alone might support a verdict of guilty. When no other evidence of the presence of the weapon is adduced, however, it is imperative that the instructions stress the focus of the jury on the presence of the weapon or article and not the fear or belief of the victim.

defendant actually possessed a dangerous weapon during the robbery, the prosecutor opted to follow the second method of establishing armed robbery, specifically, whether defendant used or fashioned an article to resemble a dangerous weapon. [*Ante,* p 465.]

This might suggest that the question was whether Jolly "fashioned" the bulge to "resemble" a dangerous weapon. I see no need or basis for such analysis. Herzog said that Jolly had a gun. That, together with the bulge, tended to establish that Jolly had a gun, a dangerous weapon, and not an article "used or fashioned" to "resemble" a dangerous weapon.[2]

The opinion of the Court states:

[T]here must be some objective evidence of the existence of a weapon or article before a jury will be permitted to assess the merits of an armed robbery charge. For example, an object pointing out from under a coat, together with statements threatening a victim with being shot, clearly satisfies the statutory definition of armed robbery. In such a case, there is evidence of actual possession of a weapon or article and the testimony regarding statements that, if believed, make clear an intent

---

[2] The Penal Code provides:

Any person who shall assault another, and shall feloniously rob, steal and take from his person, or in his presence, any money or other property, which may be the subject of larceny, such robber being armed with a dangerous weapon, or any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon, shall be guilty of a felony, punishable by imprisonment in the state prison for life or for any term of years. If an aggravated assault or serious injury is inflicted by any person while committing an armed robbery as defined in this section, the sentence shall be not less than 2 years' imprisonment in the state prison. [MCL 750.529; MSA 28.797.]

to convince the victim of the existence of such a weapon or article. [*Ante,* pp 468-469.]

I read the foregoing as stating that where there is "an object pointing out from under a coat, together with statements threatening a victim with being shot," "there is evidence of actual possession of a weapon or article," not that the statutory definition is satisfied without regard to whether the object is actually a dangerous weapon.

The opinion of the Court states:

> The typical armed robbery case prosecuted under the feigned weapon method involves either the use of a toy gun or a finger or other object hidden in a bag or under a coat to simulate the appearance of a weapon together with threatening behavior and statements indicating the existence of a weapon. The existence of some object, whether actually seen or obscured by clothing or something such as a paper bag, is objective evidence that a defendant possesses a dangerous weapon or an article used or fashioned to look like one. Related threats, whether verbal or gesticulatory, further support the existence of a weapon or article. [*Ante,* pp 469-470.]

Again, where "the use of a toy gun or a finger or other object hidden in a bag or under a coat to simulate the appearance of a weapon" is involved, "together with threatening behavior and statements indicating the existence of a weapon," the dangerous weapon prong of the armed robbery statute is in issue, not the article used or fashioned as a dangerous weapon prong.

The article used or fashioned as a dangerous weapon prong is involved where some article, harmless in itself, such as a hammer, is used as a weapon, or a bicycle chain is used or fashioned in

a manner to lead the person assaulted to reasonably believe it to be a dangerous weapon.

Where, however, as is generally the case, the evidence tends to show that the accused was carrying a dangerous weapon, the question for the jury is whether he was actually armed with a dangerous weapon, not whether he was armed with an article used or fashioned in a manner to lead the person assaulted to reasonably believe it to be a dangerous weapon.

BRICKLEY, J. (*dissenting*). I have been asked to determine whether the Court of Appeals erred in finding that the trial court erred in denying the defendant a directed verdict of not guilty of armed robbery, MCL 750.529; MSA 28.797, and whether the Court erred in reversing the defendant's conviction of unarmed robbery. I would hold that the Court of Appeals did not err and would affirm its decision.

I

It appears that I am substantially in agreement with the majority regarding how to interpret this statute. I agree that, in order to survive a directed verdict motion in this case, the prosecutor needed to present sufficient evidence that the defendant used or fashioned some article in a manner to lead the victim to reasonably believe that the defendant was armed. However, I differ regarding whether the people presented sufficient evidence. The majority would hold that "an object pointing out from under a coat, together with statements threatening a victim with being shot, clearly satisfies the statutory definition of armed robbery." *Ante*, p 468. I disagree.

In order to convict a person of armed robbery,

the people must prove that (1) the defendant assaulted the victim, (2) the defendant took property from the victim in the victim's presence and (3) the defendant (a) was in fact armed or (b) possessed an article used or fashioned in a manner to lead the victim to reasonably believe it to be a dangerous weapon. MCL 750.529; MSA 28.797. It is the second prong of this third part of the armed robbery statute that is at issue in this case. Under this second prong, the statute first requires that there be evidence that the defendant possessed some article. Second, there must be some evidence that the defendant used or fashioned this article in a manner to lead the victim to reasonably believe that the article was a dangerous weapon.

In order to determine whether to direct a verdict for the defendant, a court must look at evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979), cert den 449 US 885 (1980); *Jackson v Virginia,* 443 US 307; 99 S Ct 2781; 61 L Ed 2d 560 (1979), reh den 444 US 890 (1979). See also *People v Wolfe,* 440 Mich 508, 515; 489 NW2d 748 (1992). Circumstantial evidence and reasonable inferences drawn from it may be sufficient proof of the elements of the crime. See *People v Wolfe, supra,* pp 525-526; *People v Petrella,* 424 Mich 221, 275; 380 NW2d 11 (1985); *People v Velasquez,* 189 Mich App 14; 472 NW2d 289 (1991).

The Court of Appeals found that the people failed to present sufficient evidence that tended to prove that some article was used or fashioned to induce the belief that it was a dangerous weapon. In reaching its decision, the Court of Appeals relied on two decisions of this Court, *People v*

*Saenz,* 411 Mich 454; 307 NW2d 675 (1981), and
*People v Parker,* 417 Mich 556; 339 NW2d 455
(1983), cert den 466 US 962 (1984). In each case,
this Court interpreted the prong of the armed
robbery statute at issue here and found that the
people had presented insufficient evidence of
armed robbery.  .

In *Saenz,* the victim testified that the defendant
demanded money while keeping a hand hidden
under his coat and that he thought the defendant
was holding some kind of weapon, but that he saw
no bulge or article resembling a weapon and that
the defendant did not state that he possessed a
weapon. *Id.,* p 456. The jury convicted the defen-
dant of armed robbery. In reversing the conviction,
we found that not only must it be established that
the victim believed that the defendant had . a
weapon, but "the belief must be induced by the
use or fashion of 'any article' with which the
assailant is armed." *Id.,* p 458. We found that this
had not been established. *Id.,* p 455.

In *Parker,* the defendant was convicted of armed
robbery and first-degree criminal sexual conduct.
*Id.,* p 559. The victim testified that an assailant
had sprayed some substance into her face as she
was getting out of her car, and threatened to stab
her with a knife. He took money from her wallet,
then drove her to' another location and raped her.
Evidence showed that the defendant was appre-
hended several hours later, and a nail file was
found in his right rear pants pocket. *Id.,* p 560.
The trial court instructed the jury that in order to
find the defendant guilty of armed robbery, it was
not necessary to introduce a weapon at trial or to
prove that the victim saw a weapon. Rather, it was
only necessary to prove that the victim had a
reasonable belief that the defendant was armed

with a dangerous weapon. In holding these instructions to be erroneous,[1] this Court stated:

> It is not enough that the person assaulted is put in fear; a person who is subjected to an unarmed robbery may be put in fear.
> To constitute armed robbery, the robber must be armed with an article which is in fact a dangerous weapon—a gun, knife, bludgeon, etc., *or some article harmless in itself, but used or fashioned in a manner to induce the reasonable belief that the article is a dangerous weapon.*
>
> \* \* \*
>
> Words or threats may be evidence of the fact of being armed and under some circumstances they alone might support a verdict of guilty. When no other evidence of the presence of the weapon is adduced, however, it is imperative that the instructions stress the focus of the jury on the presence of the weapon or article and not the fear or belief of the victim. [*Id.,* p 565. Emphasis added.]

These cases show that in cases in which no actual weapon is involved it is necessary to establish not merely that the victim reasonably believed that the defendant was armed, but that the defendant "used or fashioned some article in a manner to lead" the victim to have this belief. Furthermore, these cases suggest that in order to convict someone of armed robbery under this prong of the statute, it must be shown that the defendant *intended* to induce a belief in the victim that some article possessed by the defendant was a dangerous weapon. I believe that the very language of the statute compels such a conclusion. Under the most commonly recognized use of these words, a person

---

[1] This Court did not reverse on this issue because other grounds for reversal existed; however, the Court stated that it would have reversed on these grounds had the question been before it. *Id.,* p 566.

does not "use" or "fashion" an article to resemble a weapon unintentionally. Further, I find it significant that the statute does not use words like "display" or "possess" that would leave open the possibility that it would be sufficient to show that the defendant inadvertently inspired such a belief by the mere appearance that he had an article that coincidentally resembled a weapon. Therefore, I would hold that in order for a person to be convicted of armed robbery on the basis that an article was used or fashioned to induce a belief that it was a dangerous weapon, it must be shown that the use or fashioning was intentional and not inadvertent.

Accordingly, with this concept and these cases in mind, I would find that the people have failed to present evidence sufficient to prove this element of the offense. In order to determine whether the people produced sufficient evidence of each of the elements of the second prong of the statute, I examine the evidence offered in proof. First, the victim testified that he saw a bulge at the defendant's midsection. I find that this is sufficient to enable a rational jury to find that some article existed. However, no evidence whatsoever was presented that the defendant used or fashioned an article to induce a belief that he was armed. The victim testified that he noticed a bulge in the defendant's midsection. He did not testify that the defendant or Jennifer Herzog called attention to the bulge in any way. Jennifer Herzog did not testify that she or the defendant called attention to the bulge. Nor did she testify that she and the defendant had planned to use this bulge in the robbery. The only effort to convey the impression of possession of a dangerous weapon was the oral assertion that the defendant was armed.

I acknowledge that the prosecution can satisfy

its burden by introducing circumstantial evidence from which the jury may draw inferences. However, I would find that concluding from the evidence presented here that the defendant used or fashioned some article to create a bulge in order to look like a weapon would only be speculation. The people have presented no evidence that would tend to establish a *connection* between the bulge and the threat to shoot the victim. No rational trier of fact could find beyond a reasonable doubt that the defendant used some article to create a bulge, with the intent of inducing the victim to believe that the bulge was a dangerous weapon.[2] Therefore, I think the people failed to satisfy their burden, and the trial court erred in refusing to grant the defendant's motion for a directed verdict.

II

The Court of Appeals found that *People v Vail,* 393 Mich 460; 227 NW2d 535 (1975), required reversal in this case. I agree. In *Vail,* the defendant was charged with first-degree murder and convicted of voluntary manslaughter. *Id.,* p 462. This Court found that there was insufficient evidence to warrant submission of a first-degree murder charge, and, thus, the manslaughter conviction had to be reversed. This Court stated that when a

---

[2] While I would affirm the decision of the Court of Appeals, I point out an error in its opinion. The Court stated that in order to satisfy this prong of the armed robbery statute, the prosecutor must show that the defendant "at least [had] the article *in hand* and fashion[ed] it to lead the victim to believe it [was] a dangerous weapon . . . ." *People v Jolly,* 193 Mich App 192, 201; 483 NW2d 679 (1992). I note that it is not necessary for a person to have some article in hand to be found guilty of armed robbery under this prong of the statute. The defendant need only use or fashion some article in some manner that induces a belief that it is a weapon. Indeed, I would hold that, under some circumstances, showing that a person placed some article in a belt for the purpose of inducing a belief that the article was a weapon could satisfy the requirements of the statute.

jury is allowed to consider a charge unsupported by the proofs:

> [T]here is always prejudice because a defendant's chances of acquittal on any valid charge is substantially decreased by the possibility of a compromise verdict. For this reason it is reversible error for a trial judge to refuse a directed verdict of acquittal on any charge where the prosecution has failed to present evidence from which the jury could find all elements of the crime charged. [*Id.,* p 464.]

As I would find that the trial court erred in submitting the armed robbery charge to the jury, I would also hold that the defendant's unarmed robbery conviction must be reversed, and a new trial would be required.

Accordingly, I would affirm the decision of the Court of Appeals.

CAVANAGH, C.J. (*dissenting*). At common law, robbery is aggravated larceny.[1] Although, different degrees of robbery were not recognized at common law, 4 Wharton, Criminal Law (14th ed), § 483, p 76, most, if not all, states have enacted legislation, specifying circumstances that, if present, would warrant subjecting a robber to harsher punish-

---

[1] As one commentator notes:

> [C]ommon law . . . robbery consists of larceny plus two aggravating circumstances. A larceny is aggravated and becomes robbery when (1) the property is taken from the person or presence of another, and (2) the taking is accomplished by the use of force *or* threatened force (or, as sometimes stated, by putting the victim in fear of injury). [4 Wharton, Criminal Law (14th ed), § 469, pp 39-40. Emphasis added.]

In other words, if a person takes property from another without using force or the threat of force, then that person is guilty of larceny. If, however, the person uses force or the threat of force to take property from another, then that person is guilty of robbery.

ment than that imposed for the commission of simple robbery. In applying these statutes, courts must exercise caution to avoid construing circumstances too broadly to assure that the punishment imposed fits the crime.

I

Michigan's simple or "unarmed robbery" statute provides:

> Any person who shall, by force and violence, or by assault or putting in fear, feloniously rob, steal and take from the person of another, or in his presence, any money or other property which may be the subject of larceny, *such robber not being armed with a dangerous weapon,* shall be guilty of a felony, punishable by imprisonment in the state prison not more than 15 years. [MCL 750.530; MSA 28.798. Emphasis added.]

In contrast, Michigan's aggravated or "armed robbery" statute provides:

> Any person who shall assault another, and shall feloniously rob, steal and take from his person, or in his presence, any money or other property, which may be the subject of larceny, such robber *being armed with a dangerous weapon,* or *any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon,* shall be guilty of a felony, punishable by imprisonment in the state prison for life or for any term of years. [MCL 750.529; MSA 28.797. Emphasis added.]

Even a casual reading of the statutes makes clear that, in Michigan, there are only two circumstances that distinguish unarmed robbery from armed robbery: (1) the *actual* presence of a dangerous weapon, or (2) the *actual* presence of "some

article harmless in itself, but used or fashioned in a manner to induce the reasonable belief that the article is a dangerous weapon." *People v Parker,* 417 Mich 556, 565; 339 NW2d 455 (1983), cert den 466 US 962 (1984).

A

Words and threats alone are insufficient to convict a person of aggravated robbery. As one commentary notes:

> [Because] intimidation by some means is a necessary ingredient of simple robbery without violence, *something additional* in the way of dangerousness is needed for aggravated robbery . . . . [2 LaFave & Scott, Substantive Criminal Law, § 8.11, p 456. Emphasis added.]

The "something additional," which justifies punishing robbers who are, in fact, armed with dangerous weapons more harshly than unarmed robbers, is the recognition that robbers who are, in fact, armed with dangerous weapons place their victims in "*unusually* great danger." *State v Steffenhagen,* 671 SW2d 344, 346 (Mo App, 1984). (Emphasis added.)[2] Because declarations of being armed with a dangerous weapon and threats to use a dangerous weapon during the commission of a robbery do not heighten the *actual* danger that the victim faces when the robber is, in fact, unarmed, such declarations and threats alone are insufficient to warrant conviction of aggravated robbery. *Parker,* p 565 (stating that "[w]ords or threats alone can never be dangerous weapons

---

[2] See also *State v Garza Rodriguez,* 164 Ariz 107, 111; 791 P2d 633 (1990) (stating that this element "reflect[s] the policy that the greater punishment is reserved to deter the dangerous person *actually* capable of inflicting death or serious bodily harm"). (Emphasis added.)

because the statute is concerned with weapons, not words").[3]

Accordingly, to convict a person of armed robbery under the "being armed" requirement, the prosecution must introduce sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that the accused was *actually* armed with a dangerous weapon at the time of the robbery. *Id.* While this burden may be satisfied with circumstantial evidence, most cases that have found sufficient evidence of the presence of a weapon to warrant submission of the issue to the jury involve situations in which: (1) a witness actually observed a weapon, (2) a witness actually observed "a clearly distinguishable portion" of a weapon, or (3) at a minimum, the prosecution has introduced "*substantial* circumstantial evidence indicating possession of a weapon."[4] *Butler v State,* 602 So 2d 1303, 1305 (Fla App, 1992). (Emphasis added.)

Likewise, the victim's subjective belief that a robber is armed with a dangerous weapon is not enough to convict an accused of armed robbery under the "being armed" provision, of an armed robbery statute.[5] In *Williams v Commonwealth,*

---

[3] See also *Rodriguez,* n 2 *supra* at 112 (stating that "[b]ecause mere words qualify as force sufficient to coerce the surrender of property for the lesser crime of simple robbery, the legislature must have intended to include some element other than mere words in [the statute]").

[4] See also n 8.

[5] As stated in *Butler v State, supra* at 1305:

[T]o secure a conviction . . . for armed robbery while carrying a "firearm or other deadly weapon" or for armed robbery while carrying a "weapon," respectively, the state must present evidence which would be legally sufficient to permit a jury to conclude that the defendant *actually* carried a "firearm," "other deadly weapon" or a "weapon." While the state may meet this burden by the presentation of circumstantial evidence, *it may not do so by presenting evidence of nothing more than the victim's subjective belief that the defendant possessed [such items].* [Emphasis added.]

721 SW2d 710 (Ky, 1986), the defendant had robbed a convenience store. To effectuate the robbery, the defendant threatened the clerk "by reaching towards his back pocket and cautioning, 'Do you want your life?' " *Id.* at 711. Although the clerk testified that he saw a bulge in the defendant's back pocket and believed that "maybe [the defendant] had a weapon or something," no weapon was seen or found on the defendant when he was arrested shortly thereafter. *Id.*

Construing its aggravated robbery statute,[6] the *Williams* court rejected the argument that it was not fatal to the prosecution that the defendant threatened the clerk with an unseen weapon or instrument, and found that there was insufficient evidence to submit the case to the jury. In so holding, the court stated:

> [The evidence] does not distinguish [first-degree robbery] from second-degree robbery in which the threat of physical force is the gravamen. A response of perceiving danger is quite real under threat; however, such cannot serve to convert something merely speculated upon (a weapon or instrument) into established existence.[7]
>
> To [hold] otherwise places defendant virtually without defense at the caprice of a victim's subjective evaluation without regard to the actual course of events and could lead to convictions for crimes neither intended nor enacted. Our heritage of justice applies the law to facts. Herein the fact is that although force was threatened, the presence of a weapon or instrument was illusory at best.

[6] In Kentucky, a person who "[i]s armed with a deadly weapon" or "[u]ses or threatens the immediate use of a dangerous instrument upon any person who is not a participant in the crime commits aggravated robbery." Ky Rev Stat Ann 515.020.

[7] See also *Ryder v State,* 464 So 2d 1324, 1325 (Fla App, 1985) (stating that "[r]obbers commonly merely imply the possession of a weapon in order to bolster their threat," however, "[t]hat implication cannot amount to proof of the possession").

Without an instrument's [sic] ever being seen, an intimidating threat albeit coupled with a menacing gesture cannot suffice to meet the standard necessary for a first-degree robbery conviction.[8] [*Id.* at 712.]

Before being amended, Wisconsin's robbery statute contained an aggravated robbery provision that was very similar to the "being armed" provision of the Michigan armed robbery statute.[9] As a result, Wisconsin cases deciding the existence of sufficient evidence to warrant conviction under this former statute are useful in determining the proper application of Michigan's "being armed" provision. One case is *McKissick v State*, 78 Wis 2d 176, 178; 254 NW2d 218 (1977),[10] in which the Wisconsin Supreme Court found insufficient evi-

[8] The *Williams* court stated that its holding conformed with existing case law, "for in each instance . . . the determination depended upon whether a *specific* item (e.g., a toy pistol, an unloaded pistol with a broken firing pin, a club, a shotgun, a pointed object, a knife) should be characterized as either a deadly weapon or dangerous instrument. In all but one instance the object supporting the first-degree charge was seen." *Id.*, p 712. In the one instance in which an object was not seen, the victim testified that a sharp instrument had been pressed against his back, which established the presence of something. Thus, the court found that "there simply were no facts to be referred to a jury," stating:

> Herein no object was either seen or felt. At most there was an unidentifiable bulge in Appellant's hip pocket which the prosecuting witness felt "maybe" was "a weapon or something." The Commonwealth argues that "[t]he logical inference from the evidence for a reasonable juror was that appellant had an instrument capable of inflicting deadly harm." This, however, begs the question of whether a mere pocket bulge is sufficient to create a jury issue as to the existence not just of "something" but specifically of a deadly weapon or dangerous instrument. [*Id.*]

[9] The former Wisconsin aggravated robbery provision provided that "[w]hoever [commits robbery] while armed with a dangerous weapon is guilty of [aggravated robbery]."

[10] Superseded by statute; see *State v Hopson*, 122 Wis 2d 395; 362 NW2d 166 (Wis App, 1984).

dence to warrant submission of the armed robbery issue to the jury on these facts:

> [The defendant approached a restaurant employee,] holding his right hand in his pocket, and said to her, "This is a stick up. . . . I have a gun in my pocket." As he spoke these words, the bulge in his pocket appeared to be pointed at her. [The employee] never saw the gun which the defendant professed that he had in his pocket, but she gave the defendant $96.

In reaching its decision, the *McKissick* court stated:

> While it is rather clear in the instant case that the defendant at least pretended to be armed, we specifically held in *Dickenson* [*v State,* 75 Wis 2d 47; 248 NW2d 447 (1977)[11]] that a "robbery committed by pretense of being armed" does not constitute armed robbery under the [former] Wisconsin statutes.
> . . . There was no proof of the essential element, that the defendant was in fact armed at the time he robbed [the restaurant]. [*McKissick, supra* at 179.]

In *Dickenson,* the Wisconsin Supreme Court reversed a defendant's armed robbery conviction under the former statute, finding insufficient evidence of the presence of a dangerous weapon on these facts: The defendant entered a restaurant and ordered five hamburgers. When the waiter handed the defendant the food, he stated:

> "Give me all the money you have." She paused, and he said, "Do you know what this is?" She answered, "No." He had parted the bottom buttons of his shirt to disclose what she thought was the

---

[11] Superseded by statute; see n 10.

butt of a gun protruding from the waistband of his
trousers. She glanced around the restaurant to see
if anyone was watching. He said, "It's not worth it,
baby." [She gave him the cash, and he fled but was
arrested the next day]. [*Id.* at 48.]

While the waitress was unable to "positively
identify the object in his waistband as a weapon,"
she testified that "she inferred that it was, from
his statements." *Id.* at 48-49. The court held that
this was insufficient evidence of the presence of a
dangerous weapon to submit the issue to a jury,
stating:

> In this state it is an element of the crime of
> armed robbery that the accused be, in fact, armed
> with a dangerous weapon. If there had been posi-
> tive testimony from any witnesses that [the defen-
> dant] was armed with a gun, th[at would be
> enough]. . . . Here there is only testimony that
> [the defendant] had a small black object, which
> resembled the handle of a gun, in his waistband.
> There is no testimony from which the jury could
> infer that it was of sufficient size to be used as a
> bludgeon.
> . . . The strongest evidence in support of a ju-
> ry's verdict is that the waitress saw an object in
> [the defendant's] waistband which resembled the
> handle of a gun, and [the defendant] made state-
> ments implying that the object was a gun. How-
> ever, from her recollection of what she saw and
> heard, the waitress could not testify positively the
> object was a gun. . . . [Thus, t]he jury could not
> reach such a conclusion beyond a reasonable
> doubt, when the only witness with first-hand
> knowledge who testified on the point was not
> positive that [the defendant] was armed with a
> dangerous weapon. [*Id.* at 49-50.]

The Wisconsin court stated that "the test on
review in [that] court is not whether there was

some evidence to support the jury's finding, but whether the evidence is sufficient to support a finding of guilt beyond a reasonable doubt." *Id.* at 50; accord *People v Hampton,* 407 Mich 354; 285 NW2d 284 (1979) (rejecting the "any evidence test" for the "sufficiency of the evidence" test).

Just as in *Dickenson,* the victim in this case had no idea whether the "bulge" was a dangerous weapon. As he stated at trial: "I didn't know if it was a gun or not. She said that he had a gun and I assumed because there was a bulge it could have been a buckle or anything, and I didn't know." To me, it is illogical to suggest that there is sufficient evidence for a jury to reasonably conclude that the accused was, in fact, armed with a dangerous weapon, when the only witness is uncertain whether the accused was, in fact, so armed.

Absent sufficient evidence for a reasonable jury to find that the defendant was *actually* armed with a dangerous weapon at the time of the robbery in question, the prosecution simply had no choice but to proceed under the "article used or fashioned" provision of the armed robbery statute. When viewed in a light most favorable to the prosecution, the only evidence presented was a coassailant's threat, implying that the defendant was armed with a dangerous weapon, and the victim's perception of an unexplained "bulge" at the defendant's waistline. While this evidence surely satisfies the elements required to convict a person of unarmed robbery, which requires only the showing that a larceny was accomplished by force or fear of force, the evidence is insufficient to permit a rational jury to find beyond a reasonable doubt that the defendant was, in fact, armed at the time of the robbery. To hold otherwise, would not only blur the distinction between armed and unarmed robbery, it would also render the "article used or

fashioned" provision of the armed robbery statute completely unnecessary.

### B

As previously noted, the justification for enhancing the punishment for robbers who arm themselves with dangerous weapons is that the victim is subjected to a heightened degree of *actual* danger. In other words, in such situations, enhanced punishment is justified because the defendant *actually* has the capacity to use an *unusual* degree of force that is not present during an unarmed robbery. Conversely, the justification for enhancing the punishment for robbers who arm themselves with an "article" that is "used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon," is an awareness that victims of such robberies are typically placed in an *unusual* degree of fear. *State v Hopson,* 122 Wis 2d 395, 403; 362 NW2d 166 (Wis App, 1984); *Steffenhagen, supra* at 346. Consequently, some states have enacted aggravated robbery statutes that subject robbers to enhanced punishment when they merely threaten the use of a dangerous weapon.[12]

Unlike the states that permit conviction for aggravated robbery predicated on "verbal repre-

---

[12] E.g., *James v State,* 405 So 2d 71, 73 (Ala Crim App, 1981) (construing Ala Code 13A-8-41, which provides that "any verbal or other representation by the defendant that he is . . . armed, is prima facie evidence . . . that he was so armed," "to 'protect the citizen from fear for his or another's health and safety' "); *Coley v State,* 304 Ark 304, 307; 801 SW2d 647 (1991) (construing Ark Stat Ann 5-12-103 to permit conviction of aggravated robbery where the defendant merely makes a " 'verbal representation' of being armed with a deadly weapon" for the same reason); *State v Witkowski,* 143 Wis 2d 216, 218; 420 NW2d 420 (Wis App, 1988) (stating that revised Wis Stat Ann 943.32 permits conviction of aggravated robbery when the victim's belief that the robber was armed is based merely on the robber's verbal representations alone).

sentations" of being armed with a dangerous weapon or the "threatened use of a dangerous weapon," Michigan requires more. Again, while verbal representations and threats to inflict harm, which can only be inflicted by dangerous weapons, may cause a victim to subjectively believe that the person is armed with a dangerous weapon, in Michigan, "[w]ords or threats alone" are not enough.[13] Indeed, our statute expressly requires a finding that the accused was, in fact, "armed" with something capable of being used or fashioned in a manner to lead the victim to reasonably believe that it was a dangerous weapon.

New Jersey has a similar aggravated robbery statute, which provides:

Robbery is a crime of the second degree, except that it is a crime of the first degree if in the course of committing the theft the actor attempts to kill anyone, or purposely inflicts or attempts to inflict serious bodily injury, or *is armed with, or uses or threatens the immediate use of a deadly weapon.* [NJ Stat Ann 2C:15-1b. Emphasis added.]

New Jersey defines a "deadly weapon" as

any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the *manner it is used* or is intended to be used, is known to be capable of producing death or serious bodily injury or which in the *manner it is fashioned* would lead the

---

[13] Words and threats are the proper subject of unarmed robbery, which is concerned with robbery by intimidation induced by force or fear of force. See n 1. Thus, in my view, to hold that words or threats alone are sufficient to find a person guilty of armed robbery fails to distinguish between the two crimes and places the defendant at risk of being punished for a crime not committed. Accordingly, I disagree with *Parker* if it is read to suggest that words or threats alone may be sufficient to support a verdict of guilty under Michigan's armed robbery statute.

victim to reasonably believe it to be capable of producing death or serious bodily injury. [NJ Stat Ann 2C:11-1c. Emphasis added.]

Applying these statutes in *State v Hutson,* 211 NJ Super 49; 510 A2d 706 (1986), a New Jersey court noted that, while the "subjective belief of the victim [is] relevant," "there must be some object upon which the victim bases his or her belief, some tangible object which the victim believes to be a deadly weapon." *Id.* at 53. Thus, the appellate court in *Hutson* reversed the defendant's armed robbery conviction, where the evidence showed that the defendant and another person, while passengers in a cab, demanded money and threatened the use of a gun, a magnum to be precise. *Id.* at 51. The cab driver said that he turned around and saw one of the men holding a newspaper and that he believed the paper concealed a gun. In reversing the defendant's conviction of armed robbery, the court stated:

> In the instant case no [tangible] object was displayed; no [tangible] object existed. The driver's belief that a gun was under the newspaper neither converted the paper into a weapon nor eliminated the need for the existence of *some* object. Construing the criminal statute narrowly, as we must, we find error in the trial judge's conclusion that a victim's subjective belief is enough to satisfy a showing of a deadly weapon. Had the Legislature intended a solely subjective standard, it could easily have said so. [*Id.* at 53. Emphasis in original.]

In affirming the appellate court's decision in *Hutson,* the New Jersey Supreme Court stated:

> The point is obvious: what is missing in this record is the link between the threat and the

object viewed by the victim. Had the newspaper been presented to the victim so as to create the reasonable impression that it concealed a dangerous object, the definition of dangerous weapon would have been satisfied. Our disagreement with the Appellate Division is narrow, but critical: to the extent that the opinion of the court below may be read to suggest that a newspaper either fashioned to look like a weapon or held in such a manner as reasonably to lead a victim to believe that it concealed a weapon would not satisfy the statutory requirement of a deadly weapon, it is incorrect. Such evidence, had it surfaced in this case, would indeed have met the statutory definition; but the record as it stands does not generate an inference that defendant had created the reasonable impression that he was concealing a weapon under a newspaper. [107 NJ 222, 228-229; 526 A2d 687 (1987).]

The same thing that was missing in *Hutson,* is also missing in the present case, i.e., there is absolutely no link between the coassailant's threat and the bulge viewed by the victim. Absent such a link, there is insufficient evidence to permit conviction of this defendant of armed robbery. Consequently, I would agree with Justice BRICKLEY that, on this record, there is insufficient evidence for a rational jury to find that "the defendant used or fashioned an article to induce a belief that he was armed," *ante,* p 479, at the time of the robbery.[14]

---

[14] The Missouri case cited by the majority, in support of the proposition that "threats of a killing and the existence of a bulge in the defendant's pocket were sufficient to prove the threatened use of a dangerous weapon even though the victims never actually saw an instrument," is clearly distinguishable. *Ante,* p 470. In *State v Mc-Cracken,* 829 SW2d 634 (Mo App, 1992), although no weapon was displayed, there was testimony that the defendant had a "bulge in his pocket *where he had his hand,* larger than a bulge from the hand itself." *Id.* at 635. (Emphasis added.) Thus, unlike the facts in this case, in *McCracken,* there was a link between the defendants' verbal threats to "kill" and the victim's observation of an unexplained "bulge."

II

I concur with Justice Brickley's opinion.